### BONSACK MACH. CO. v. UNDERWOOD.

(Circuit Court, E. D. North Carolina. March 2, 1896.)

1. PATENTS—CIGARETTE MACHINES.
   The Hook patent, No. 184,207, for a cigarette-making machine, covers a patentable and primary invention, and the second claim thereof is infringed by a machine made in accordance with the Underwood patent, No. 470,269.

2. SAME.
   The Emery patent, No. 216,164, for a cigarette machine, held not infringed as to claims 10 and 12, which relate especially to "a filler-forming chamber," but held valid and infringed as to claim 13, which is for "an endless belt and a guide tube, whereby a continuous filler in a sealed wrapper is inclosed and carried forward," by the Underwood machine (patent No. 470,269); and claims 14 and 15, which relate to minor details of mechanism, by which the completed cigarette rod is presented to the cutting mechanism, held void for want of patentable improvement over the Hook machine.

3. SAME.
   The Bonsack patent, No. 238,640, for a cigarette machine, held not infringed as to claims 6 and 7, which relate to the device for wrapping the paper about the filler, by the Underwood machine (patent No. 470,269).

4. SAME—INFRINGEMENT—EXPERIMENTAL MACHINES.
   The making of an infringing machine merely as an experiment is not an actionable infringement, but if it is to be used for the purpose of selling the patent under which it is made, it is then to be regarded as used for profit, and a suit will lie for the infringement.

5. SAME—LICENSE TO MAKE INFRINGING MACHINE.
   A manufacturer who had contracted with a corporation to make no cigarette machines except under a patent owned by the corporation, submitted to its secretary the question of making a machine for another inventor, and was told to go ahead, and that when the machine was put on the mar-

ket his company would look into the matter of infringement. *Held*, that this did not estop the company from suing such inventor for infringement.

This was a suit in equity by the Bonsack Machine Company against J. B. Underwood for alleged infringement of certain patents for cigarette machines.

A. H. Burroughs, Samuel A. Duncan, Robert H. Duncan, and Busbee & Busbee, for complainant.

George M. Rose, M. De W. Stevenson, John W. Hinsdale, and N. A. Sinclair, for defendant.

Before SIMONTON, Circuit Judge, and SEYMOUR, District Judge.

SEYMOUR, District Judge. The Bonsack Machine Company brings suit against the defendant for infringement of letters patent No. 184,207, granted to A. H. Hook, and dated November 7, 1876; No. 216,164, granted to C. G. and W. H. Emery. and dated June 3, 1879; and No. 238,640, granted to J. A. Bonsack, and dated March 8, 1881. The defendant's patent is numbered 470,269, and bears date March 8, 1892. These patents are all for cigarette-making machines. In all of them a continuous ribbon of paper for forming a cigarette wrapper is drawn from a spool or reel past a wheel which applies paste to one edge, and through a former which folds them around the tobacco and presses the pasted edge to the paper, thus forming a continuous cigarette, proper to be cut into suitable lengths. In the Hook machine a paper ribbon drawn from a reel enters a tapering former, which, commencing as a trough, terminates in a tube. The trough and tube gradually fold the edges of the paper over tobacco which is delivered to the paper from a bucket wheel while its surface is in a flat position, and before it enters the tube. Before the edges are folded over one another, one is drawn down, and passes a pasting wheel, which applies paste to its edge. A continuous cigarette of an indefinite length is thus produced, which, as it leaves the machine, is cut into cigarettes of the usual length. The Emery machine does not, as does the Hook machine, form the filler inside of the wrapper, but previous to the application of the former to the paper. The filler in the Emery machine is continuously formed in an endless traveling belt, curved around it by the walls of a chamber through which it passes. The endless belt separates from the tobacco filler as it delivers it to the paper wrapper. The wrapper, with the already formed filler, is then taken through a former, which wraps the ribbon about the filler, past a pasting disk, and through a tube to the mechanism constructed for the purpose of cutting it into cigarettes. The Bonsack machine provides for carrying wrapper and filler, in the belt, through the wrapping mechanism. It also adds side guides and a spiral groove and flange for the purpose of keeping in place the edges of the ribbon during the process of being pasted and folded around the filler. In the defendant's machine, as in those constructed under the Emery and Bonsack patents, the filler is formed before the paper envelope is applied to it. But, instead of being formed in an end-

less traveling belt, curved around it by the walls of the chamber through which it passes, it is formed by passing between two grooved revolving wheels so adjusted that the two grooves form a substantially circular opening between the wheels. The tobacco-feeding mechanism of the Underwood machine consists of a casing in which a cylinder revolves on a vertical axis, the cylinder and casing being both provided with picker teeth to disentangle and distribute the fibers of the tobacco. At the base of the cylinder, on the same shaft, is a grooved wheel, provided with a horizontal flange arranged immediately below the lower edge of the groove. Opposite, and revolving in the same plane, is another grooved wheel, so adjusted that the upper and lower edges of each wheel touch and form a circular opening between the wheels, while the horizontal flange of the first wheel projects immediately under the second wheel. Because of this arrangement the tobacco which is deposited on the flange is carried through the opening between the two grooved wheels, and compressed by them, as has been stated, into a continuous cylindrical filler. The filler so formed is delivered onto the paper ribbon passing immediately beneath. The paper ribbon is unwound from a wheel below, and carried over a pulley at the same level with, and immediately in front of another pulley, over which passes an endless traveling belt, to which the paper is applied. As the traveling belt moves, it draws with it the wrapper, unwinding it from the reel. Traveling belt, paper wrapper, and filler are carried along a longitudinally divided table, which permits the lower part of the belt to be carried on pulleys a little below its surface. The traveling belt is compound, and consists of a lower or power belt and an upper carrier belt. The two members are secured together along their central line by a row of stitches. Immediately upon receiving the filler, the compound belt enters into a slotted trough or folding channel arranged longitudinally along the top of the divided table. This channel is composed of two adjustable guide bars so adjusted as to form a narrow slot between them. The slot between the inner lower edges of the guide bars permits the passage of the carrier belt within the channel while the power belt travels below the channel. The guide bars are each provided for a part of their length with an inwardly projecting and downwardly inclined flange or belt guard. The guide bars themselves at their front ends are nearly longitudinal. As the carrier belt, with the wrapper and core, are drawn along through them, they gradually arise to a nearly vertical position, while the flanges are gradually inclined downwards to a nearly vertical position. The carrying belt and wrapper are thus made to form a U-shaped channel. As they pass further along through the channel, one side of the carrying belt and wrapper is curved over the filler by a "deflector," so as to permit paste to be applied by a wheel to the standing edge of the paper. Further on, a "separator" separates the belt from the turned-over edge of the paper. The other edge of the belt and the pasted side of the paper are next curved over the filler and opposite side of the paper by a "belt-curver," and the filler is sealed

within the wrapper. The completed continuous cigarette is then carried forward, and cut into cigarette lengths by cutting mechanism. The Underwood machine, it is claimed by the plaintiff, infringes claim 2 of the Hook patent, claims 10, 12, 13, 14, and 15 of the Emery patent, and claims 6 and 7 of the Bonsack patent.

The second claim of the Hook patent is as follows:

"(2) The combination of a spool, A, gumming wheel, B, trough, C, and cylinder, D, with a mechanism for charging with tobacco and drawing the ribbon, 'a,' through the trough and cylinder as set forth."

The three patents of the plaintiff have heretofore been in litigation in the Southern district of New York in the case of Machine Co. v. Elliot, 63 Fed. 835, in the circuit court, and on appeal, 16 C. C. A. 250, 69 Fed. 335. The patent of Abadie & Co., and the unpatented Hook machine, referred to in the opinions of the circuit and appellate courts in the Elliot Case, are not mentioned in the records or briefs in this case. The Hook machine appears to have been, as was stated by Shipman, J., in Machine Co. v. Elliott, 16 C. C. A. 250, 69 Fed. 339, "a patentable and primary invention, and its wrapping mechanism exists, with many improvements, in the machines of to-day." It exists in substance in the Underwood machine. Underwood uses the Hook wrapping device, and folds the paper around the tobacco in the general way pointed out by Hook. His machine has a spool, a gumming wheel, a trough, and mechanism for applying tobacco to a ribbon, of paper and drawing it through a trough and cylinder. The difference of detail between the Underwood and Hook machines are not (in view of the fact that the latter embodies a primary invention) material. We are of the opinion that the second claim of the Hook patent has been infringed by defendant. The tenth, twelfth, thirteenth, fourteenth, and fifteenth claims of the Emery patent are as follows:

"(10) In combination with an endless belt, a filler-forming chamber, and a guide for applying a wrapper around a filler, a conductor or chamber through which the continuous filler and wrapper are conveyed to a suitable pasting device, whereby the swelling of the filler is prevented, and the wrapper is held in form while the edges are secured by pasting, substantially as described." "(12) The combination of a gauge or former for uniting the edges of the wrapper with a paste supplying and distributing disk, and mechanism for operating the same, a guide for wrapping the wrapper around the filler, a filler-forming chamber, and an endless flexible belt; all to operate in a manner substantially as described. (13) In combination with devices for forming a continuous cigarette, an endless belt and a guide tube, whereby a continuous filler in a sealed wrapper is inclosed and carried forward, substantially as described. (14) In combination with devices for forming a continuous cigarette of any desired size, an endless belt, a guide tube, and a delivery tube, whereby a continuous cigarette is presented to the action of suitable cutting mechanism for division into desired lengths, substantially as described. (15) The combination of an endless belt and guide tube with a delivery tube and suitable cutting devices, whereby a continuous cigarette of any desired diameter can be advanced and severed into desired lengths, substantially as described."

The essential matter in the tenth and twelfth claims of the Emery patent is "a filler-forming chamber." We do not think that this claim is infringed by the Underwood machine. It is true that both form the filler separately from the wrapper, and wrap the latter around a previously formed filler. But the process of form-

ing the filler is radically different in the two machines. Nor do we think that even upon the most liberal construction of these claims the device which in the Underwood machine forms the filler by pressing the tobacco between the grooves of two revolving wheels touching each other only on the line of their contact, can be called a "filler-forming chamber." The thirteenth claim of the Emery patent, for "an endless belt and a guide tube, whereby a continuous filler in a sealed wrapper is inclosed and carried forward," appears valid. There is no evidence that any cigarette machine made prior to the date of the patent, contained an endless belt to support the wrapper and draw it through the machine. This was a valuable improvement upon the Hook patent, and appears indispensable to its commercial success. The Underwood machine appears to have a combination which is substantially the same as that called for in this claim of the Emery patent. The fourteenth and fifteenth claims are for minor details of mechanism by which the completed cigarette rod is presented to cutting mechanism. That it was to be drawn along and to be presented to cutting mechanism was shown in the Hook patent, and therefore the need of some sort of guide or delivery tube or conveying mechanism was obvious. We think that the claims do not contain any patentable improvement. Machine Co. v. Elliott, 16 C. C. A. 250, 69 Fed. 335–341.

The sixth and seventh claims of the Bonsack patent are as follows:

"(6) In a cigarette machine which rolls a continuous cigarette in an endless belt by passing through a tapering tube, the combination of an open trough having side guides for the belt, a tapering tube having a spiral groove extending from one of said side guides, and a terminal section to the tapering tube having its edges lapped passed each other, but not united, so as to form a flange continuous with the spiral groove, substantially as and for the purpose described. (7) In a cigarette machine which rolls a continuous cigarette in an endless belt by passing through a tapering tube, the combination of an opening trough having side guides for the belt, a tapering tube having a spiral groove extending from one of the side guides of the trough, and a terminal section having its edges separated to form a flange, S, to give access to the paste wheel, and then closed again, as and for the purpose described."

In the Bonsack machine the prepared filler is received by the paper wrapper as the latter is drawn into a trough. The wrapper is supported by an endless belt, whose purpose is, besides supporting the cigarette rod and paper, to form them, and enfold the tobacco with the paper. The belt is narrower than the wrapper, so as to admit the application of paste to the lapping edge of the paper as it passes the pasting wheel. A spiral side groove for the edges of the belt within the tube through which belt wrapper and tobacco are drawn after leaving the trough, causes the covering and wrapping of the paper to proceed only on one side. The guide groove opens in the form of a longitudinal lip as soon as the complete circumference is made to expose one edge of the paper to the paste, and then closes again to force the pasted edge down on the body of the cigarette. It is clear from these descriptions that the devices for forming the cigarette rod, for covering the

paper over the rod, for presenting its edge to the paster and for curling one edge over the other, are materially different in the two machines. The Underwood machine has no tapering tube with a spiral groove. Its belt is as wide or wider than the paper wrapper, and wraps paper around tobacco by turning each side of the belt over the cigarette rod alternately, allowing each side of the belt to assume a vertical position, so that at no time are both sides of the belt curved around the rod. We do not think that Underwood's machine is an infringement of these claims of the Bonsack patent.

The defendant denies the plaintiff's right to maintain this suit on the grounds of license and privilege. He says plaintiff permitted him to make the one machine that he made, and that he has never used that machine for commercial purposes. It is true that, if an infringing machine is made or used as an experiment merely, it does not infringe former patents. And it has been held that the making of a machine as an experiment, and its exhibition as simply a model or illustration, do not of themselves constitute an infringement. Machine Co. v. Teague, 15 Fed. 390. To constitute an infringement, the making must be with an intent to use for profit, and not for the mere purpose of a philosophical experiment. Sawin v. Guild, 1 Robb, Pat. Cas. 47, Fed. Cas. No. 12,391. In the present case, however, the Underwood machine has not been made simply as an experiment, but has been used for profit, that is, for the purpose of selling the patent. The defendant, besides making a contract by which he gave a 60-days option to James A. Bryan, an original codefendant, to purchase, has taken his machine to St. Louis, and assisted in organizing a company in that city for manufacturing cigarettes under his patent. A bill will lie for an injunction upon well-grounded proof of the intention to violate the patent right. Sherman v. Nutt, 35 Fed. 149. As for the alleged license, it is not contended that any consent was given to any commercial use of the machine. The utmost of defendant's claim is that the plaintiff permitted the Glamorgan Company, of Lynchburg, Va., to build his machine. It seems that this company, which manufactured the Bonsack machines, was under contract not to construct any other cigarette machine any part of which was substantially covered by the Bonsack patents. Apprehensive of some trouble with the Bonsack Company, McWane, superintendent of the Glamorgan Company, submitted the matter of building Underwood's machine to Mr. Krise, secretary and treasurer of the Bonsack Company. Krise told him to go ahead, and said that when the machine was put upon the market his company would look into the matter of infringement; that whether it was an infringement could only be finally settled by a court. We do not see anything in this that estops the plaintiff from maintaining its suit. We attach no importance to the alleged opinion of Mr. Argobite that the Underwood machine was not an infringement of the Bonsack patents. Mr. Argobite had no authority from the Bonsack Company to speak for it on any such question, and his

opinion is clearly incompetent. The Hook patent expired in 1893, but the Underwood machine was built during its life.

Let a decree be entered for the orator that the second claim of the Hook patent was valid, and that the thirteenth claim of the Emery patent is valid; that they have been infringed; and for an injunction against further infringement of the said claim of the Emery patent, and for an accounting with respect to the infringement of the second claim of the Hook patent and the thirteenth claim of the Emery patent.

SIMONTON, Circuit Judge. I concur in the conclusion reached by my Brother SEYMOUR. At the hearing it was distinctly admitted that the question of infringement would not be denied, but the defendant pressed upon the court that this was not a case for damages. He contended that the Underwood machine was wholly experimental, made with the knowledge and consent of the complainant, and with no view to practical operation. This contention has been contradicted by the fact that Underwood has contracted to sell his supposed invention to Dula & Drummond, trustees.