## UNITED STATES BLIND STITCH MACH. CORPORATION v. RELIABLE MACH. WORKS, Inc.

### No. 4646.

District Court, E. D. New York.

July 28, 1931.

Mock & Blum, of New York City, for plaintiff.

Cavanagh & James, of New York City (Maxwell James, of New York City, of counsel), for defendant.

GALSTON, District Judge.

This is a patent infringement suit wherein the plaintiff alleges the infringement of letters patent No. 1,706,392, issued March 26, 1929, to Mario Buono and Julius Buono, for a method of treating furs and a machine therefor. The answer, in addition to defenses, sets up two counterclaims alleging the infringement by the plaintiff of letters patent No. 1,724,542 to Jacob Zabel, issued August 13, 1929, for a fur brushing and ironing machine, and also letters patent No. 1,776,114 issued to Samuel Friedman on September 16, 1930, for a method and apparatus for treating fur.

Consideration will be given first to the Buono patent, to which defenses of invalidity and noninfringement are vigorously asserted. The five claims of the patent are in issue. Claims 1 and 2 cover a machine, and the remaining claims a method.

The inventor sought a machine and also an improved method for brushing and setting the hairs of the furs so as to create in the fur a fluffy and ornamental appearance.

According to the invention the fur is subjected to a brushing operation after it has been thoroughly moistened, warmed, and pressed, and while it is being dried. Fig. 4 of the patent discloses a heated roller 27 revolvedly mounted upon an arm 27' and pivotally mounted upon brackets connected to the feed table T. The roller is provided with an arm 26, so that it may be moved back to the inoperative position. Stop screws 29 are provided for regulating the forward movement of the roller, and tension springs 30 for regulating the pressure with which the roller is pressed against the hair of the fur.

The operation disclosed indicates that the fur may be moistened by means of a brush

and then fed to the machine with the heated roller in the operative position. The feed of the fur is effected by means of the rollers 4 and 5 after passing the heating roller 27. The warm and moist fur is then subjected to a rapid drying action by a current of air which is induced by a blower 16, while at the same time the fur is brushed by the brush 3.

The machine claims read as follows:

"1. A machine for setting the hairs of a pelt comprising brushing means, feeding means adapted to feed the pelt towards said brushing means, and means adapted to heat the fur before it is subjected to the action of the brushing means."

"2. A machine for setting the hairs of a pelt comprising brushing means, feeding means adapted to feed the pelt towards said brushing means, and roller means adapted to heat the fur before it is subjected to the action of the brushing means, and means adapted to force a current of air over the hairs after they have been subjected to the brushing operation."

The defendant's machine has a pair of feed rollers which feed the fur toward a drum made up of two ironing segments and two brushing segments. It is also provided with a suction unit. Plaintiff's expert said that the air enters defendant's machine (Plaintiff's Exhibit 6, fig. 2) between the rollers 61 and 31 on both sides of the fur and is drawn in the direction of the arrows, as indicated on that drawing.

Comparing the defendant's machine then with claim 1 of the patent, while it appears that there are feeding means adapted to move the pelt towards the brushing means, it is clearly apparent that it is altogether a matter of haphazard as to whether the fur will first be subjected to the action of the heating element or the brushing element. Of course, if it is brought in contact with all four segments of the drum, it will alternately be brushed and heated or heated and brushed, as the case may be, and therefore at some stage it will be heated before it is again brushed.

It seems to me that the Buono specification cannot be read without reaching the conclusion that the inventors provided particularly for heating the fur before brushing it. Otherwise there would be no reason for positioning the roller 27 in advance not only of the brushing means but also of the feeding means; and I do not believe that claim 1 is entitled to any such broad construction as would include the defendant's construction.

Differences in operation resulting from differences in the structure of the patented machine and the defendant's machine are readily noted. From the patent it appears that fur to be treated must first be continuously heated and then continuously brushed. This is not the defendant's structure. Secondly, it is obvious why in using the machine of the patent it is necessary to wet the fur before it is subjected to the heating operation. The continuous heating of a dry fur would be very likely to singe the pelt. This would not be the result of the defendant's machine, for the alternating heating and brushing segments, as was stated by Mr. Wentworth, defendant's expert, make it possible to feed the fur in a dry condition to the machine without likelihood of singeing.

In short, I do not find either identity of means or identity of operation, and there is much doubt as to whether even identity of result is proved by the plaintiff.

In these circumstances there can be no infringement. Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 18 S. Ct. 707, 42 L. Ed. 1136.

What has been said about failure of proof in respect to infringement of the first claim is equally true of the second claim.

The remaining claims of the patent are method claims. Claim 3 may be taken as typical: "3. A method of setting the hairs of a pelt which consists in moistening and heating the said hairs, and subsequently brushing the hairs while permitting them to dry and cool."

Plaintiff's proof as to the alleged infringement of these claims does not establish any practice by the defendant. The proofs show that the defendant is engaged only in the leasing or sale of the alleged infringing machines. There certainly, therefore, cannot be any direct infringement by the defendant; and there is failure of proof to establish by a fair preponderance of evidence that the defendant's machine must be operated so as to fall within the limitations of claim 3 or the other method claims. Despite affirmative testimony of some of plaintiff's witnesses, I am not convinced that in the operation of the defendant's machine the fur must first be moistened. That it may be so operated is, of course, possible; but that it may also be operated effectively without moistening the fur was demonstrated at the trial. The most that can be said is that some skins can best be given the desired fluffy appearance if in the course of the process they have been moistened, whereas with many oth-

er skins moistening is not necessary. From the state of the proof one cannot draw the conclusion that even though some of defendant's lessees moisten the furs which they run through the defendant's machines that the normal use of the machine necessitates such a method. It is well understood that the defendant would be a contributory infringer if his machine were supplied to one with the knowledge that in its normal and usual operation it were necessary to moisten the fur. Such, however, is not the proof. Moreover, the president of the defendant company testified that a special point is made of instructing lessees not to wet the skin. His testimony was corroborated by the witness Bublitz. 'In this state of the proof, contributory infringement is not shown. Electro-Bleaching Gas Co. v. Paradon Engineering Co. (D. C.) 15 F.(2d) 854. It is true that plaintiff cites what apparently is authority to the contrary, as, for example, Parsons Non-Skid Co. v. Asch (D. C.) 196 F. 215.

There can be no quarrel with that law, but the facts in respect to the acts of the defendant in this case do not fall within its limitations. The same comment can be made of Parsons v. Atlas (C. C. A.) 198 F. 399; and Marconi v. De Forest (D. C.) 225 F. 65.

Again, aside from the question of whether in the normal operation of the defendant's machine the fur is moistened at all, it remains true, as appeared in the discussion of the machine claim, that the heating operation is a separate and distinct stage and precedes the brushing operation. Such is not at all the operation of the defendant's machine.

Because of the foregoing views on the question of infringement, it is not necessary to discuss the defense of invalidity.

There remains for consideration the alleged infringement by plaintiff of the Zabel and Friedman patents.

As to the former, the defense of the plaintiff at the trial seemed to be along the lines of inoperativeness of the Zabel device. The claims of the patent at issue are 1, 4, 6, and 8, and are applied by the defendant to Defendant's Exhibit H, one of plaintiff's machines.

The Zabel invention as described in the specification seeks a means for finishing furs in which the brushing and ironing steps are carried out with uniformity. Referring to the figures of the drawing, the inventor says:

"Referring now more in detail to the drawings and having reference first to Figs. 1 to 3 thereof wherein is shown a suitable form of apparatus for carrying out the objects of the invention, the apparatus comprises the supporting standards 7 and 8 having bearings for a shaft 9 upon which contact rings 10 are secured for furnishing energy to a plurality of electrical heating units, 12, 12 arranged beneath the curved smoothing or ironing surfaces 13 and 14. The ironing surfaces 13 and 14 are supported by a block 15 which extends longitudinally upon and is fixed to the shaft 9, the said block also serving as a support for a plurality of brush bases 16 and 17 suitably secured thereto. These brush bases are provided with brush elements or bristles 18 preferably arranged at an angle as shown. The brush elements 16 and 17 and the heating elements 13 and 14 thus comprise, when fixed to the supporting block 15, a rotatable drum with the heating and brushing elements arranged in close contiguity and in alternation."

"Cooperating with this drum assembly and fixed to the standards 7 and 8, there is provided a table or platform 20 which serves as a table or support for the fur or like fabric to be treated. For rotating the drum assembly there is provided a handle or other suitable motor 21 secured to the shaft 9 so that as the fur is fed beneath the drum and on the table or support 20, the fur is subjected to the alternating action of the brushes 18 and the ironing elements 13 and 14 in a continuous operation."

I think the court demonstrations showed the machine to be operable; and though by statement of plaintiff's counsel it seems the plaintiff subsequent to the date of the Zabel patent sold but two of its machines, nevertheless those machines do fall within the confines of the Zabel invention. Photographs, Defendant's Exhibit G, as well as Defendant's Exhibit H, illustrate the plaintiff's machine in question.

Taking claim 6, for example, one finds "means for mounting a pelt" in table F. "A rotatable drum having brushing and ironing members arranged in alternating contiguity" are the brushes C and the ironing members B. "Means for rotating the drum relatively to the pelt so as to move the brushing and ironing members alternately in successive repeats relative to said pelt" are the operating mechanism of the machine.

I think all four claims of this patent are infringed.

The only prior art set up in the reply to the counterclaim is the Buono patent in suit.

I do not find in the Buono patent a disclosure of the alternate heating and brushing means of the Zabel patent.

I find, although the actual infringements of the Zabel patent are unlikely to make an accounting other than burdensome, the defendant is entitled to injunctive relief as to this patent.

The Friedman patent in suit, also owned by the defendant, covers, as appears from the first paragraph of the specifications, an improvement of the Zabel patent.

Of the thirty-three claims of the patent, the defendant relies for infringement on claims 8, 11, 13, 14, and 25. Plaintiff contends that no discussion of this patent is necessary because it asserts that it has sold no machine complained of subsequent to the date of the issuance of the patent. Buono, for the plaintiff, testified that the last sale of a machine such as Defendant's Exhibit H was sold by plaintiff in the latter part of May, 1930. The Friedman patent issued on September 16, 1930. Buono testified that after conference with his attorney he caused two of these machines to be broken up and kept one, which is still in the possession of the plaintiff. It was placed in the showroom because the witness did not want counsel for the defendant, or any of those connected with the defendant, on their appointed visit of inspection, to enter plaintiff's factory.

There is no proof that the plaintiff made, used, or sold a machine of the Friedman type subsequent to September 16, 1930; nor is there evidence that the mere possession of one of the machines made prior to the issuance of the Friedman patent indicates an intention by the plaintiff to infringe. It is for that reason that cases cited by the defendant, such as Sherman v. Nutt (C. C.) 35 F. 149; Bonsack Machine Co. v. Underwood (C. C.) 73 F. 206; Westinghouse Machine Co. v. Press Publishing Co. (C. C.) 127 F. 822, etc. do not apply.

A decree may, therefore, be entered for the defendant in accordance with the foregoing opinion, dismissing the complaint and sustaining the counterclaim as to the Zabel patent; and for the plaintiff, dismissing the counterclaim as to the Friedman patent.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.