## DUGAN v. LEAR AVIA, Inc.

District Court, S. D. New York.
April 28, 1944.

Joseph Dugan, pro se (John V. Lizars, of New York City, of counsel), for plaintiff.

Thomas J. Byrne, of New York City (Thomas J. Byrne and S. Michael Pineles, both of New York City, of counsel), for defendant.

RIFKIND, District Judge.

By his complaint, plaintiff alleged infringement by defendant of plaintiff's patent No. 1,959,264 issued May 13, 1934, and sought an injunction and an accounting. At the trial plaintiff abandoned his prayer for an injunction and limited the claims in issue to numbers 1, 2, 3, 4 and 6. The answer denied infringement and alleged invalidity of the patent for want of invention, inoperativeness and insufficiency of the disclosure.

The patent in suit is for a direction-finding and position-indicating system. The principal subject of the claimed invention, in its most elaborated form, relates to a system whereby aircraft and other vehicles may be automatically directed in straight line, drift-corrected movement toward or away from a radio beacon or on a line joining two beacons defining the proposed course of travel. The system consists of one or more pairs of radio loop antennae installed upon a craft in such a manner that each pair of loops is free to rotate about a vertical axis, the number of pairs corresponding to the number of radio beacons in relation to which the craft is to be directed. The two loops of each pair are angularly disposed towards each other; and, being free to rotate, can be so oriented toward the beacon that the radio signals impinging upon each of the two loops are either equal or unequal in intensity. When the signals entering each of the loops are unequal in strength, the loop more strongly energized will cause an electric impulse, amplified by a radio receiver, to move a galvanometer needle, over a dial, to the right or left, depending upon which of the loops is the more strongly energized. Contact of the needle with commutator strips upon the dial brings a follow up motor into play, correspondingly to the right or left, depending on which side of the dial has been contacted. The follow up motor is arranged to turn the shaft upon which the loop antennae rotate until the pair of loops reach a point of equilibrium in the strength of the radio signals received, at which time it is directed toward the radio beacon. The rotation of the shaft upon which the radio loops are mounted is transmitted, by means of pulleys, to an indicator so disposed as to be visible to the pilot,

and adjusted to point in the same direction as the line bisecting the angle of the two loop antennae.

When two such indicators, operated by two individual units such as described, are brought together upon concentric axes, the angle of deviation between the two indicators reveals the angle between the lines joining the craft and the two beacons, and enables the pilot to steer the craft into alignment with the proposed course of travel in straight line, drift-corrected direction.

Claim 3 reads: "In a direction finding system, a vehicle, two direction determining devices, each rotatable about a normally vertical axis on said vehicle, a pilot director including two indicators rotatable on said vehicle, means for transmitting the rotation of one of said devices to one of said indicators, means for transmitting the rotation of the other device to the other indicator, said indicators being mounted on said vehicle to align substantially with each other only when the lines of direction of said devices lie in substantially the same plane."

Claim 6 reads: "A radio transmitter; a vehicle; a radio receiver responsive to said transmitter and including a directional antenna rotatable about a normally vertical axis on said vehicle; a pilot director separate from said receiver and including an indicator rotatable on said vehicle; mechanism for rotating said antenna and indicator in synchronism; said mechanism including a follow-up motor and independent means for energizing said motor; and a circuit closer operable by energy derived from said transmitter through said receiver to control application of said means to said motor".

Plaintiff does not contend that there is novelty in any of the elements of his system. He relies upon the claim of novelty for his combination. While there is evidence of some licenses issued by the plaintiff, no concrete exemplification of any device or devices manufactured under the patent in suit has been exhibited.

The accused devices are shown in three patents (Plaintiff's Exhibits 7, 8 and 9) and in an advertisement published by defendant (Plaintiff's Exhibit 10). These devices are admittedly manufactured and sold by the defendant except for one which, the defendant claims, has been made experimentally only (Plaintiff's Exhibit 9).

Insofar as the patent and the accused devices relate to an automatic direction-finder

they all require and possess these three elements: 1, a sighting device to identify a landmark or target sufficiently distant to be suitable for the mode of travel employed; 2, a mechanism or means to cause the sighting device to remain trained upon the target regardless of the movement of the vehicle; 3, a mechanism which automatically and constantly transmits to the pilot visual intelligence of the direction of the target.

Plaintiff claims that he has a pioneer patent entitled to broad and liberal reading. Defendant concedes that if the patent in issue were entitled to a broad interpretation the accused devices which it manufactures and sells would constitute infringements; but it asserts that if the patent is so interpreted, it is clearly anticipated by the prior art; whereas, if the patent in suit is limited to a narrow scope, it is not infringed. Because the issue is so presented it has seemed to me preferable to reverse the usual order and to consider first the issue of validity.

## Validity

The real issue developed between the parties is this: plaintiff claims that he has invented the first automatic system for directing an aircraft in drift-corrected movement in relation to a radio beacon. Defendant claims that plaintiff's teaching is old in the art; that his patent is a paper patent; that the delay in the practical utilization of the principles underlying plaintiff's combination was not caused by ignorance of those skilled in the art but by the difficulty of solving a number of practical problems in connection with their utilization, such as weight, balance, effect of temperature changes, bi-directional ambiguity, problems which had to be solved before practical use could be made of the well known principles in the navigation of an aircraft; that defendant did solve those problems whereas plaintiff did not.

Plaintiff's own testimony as to the development of his invention is instructive. In January, 1930, he said, he read that an aeroplane flying in a fog from San Diego to Los Angeles had crashed into a mountainside. Many lives were lost. He considered that if that plane had been able to fly in a straight line between San Diego and Los Angeles the disaster would not have occurred. At that time he had already procured British patent No. 161,784 issued in 1921 for "improved drift-correction and indicating apparatus" and had already filed his application which later matured into U. S. patent No. 1,800,931 for a synchronous bomb-sight. He knew, therefore, that it was possible to maintain a moving craft in alignment with two landmarks by sighting two telescopes, one addressed to each of the landmarks, and transmitting the direction of each of the telescopes, by any one of many repeater systems, to an indicator or pointer visible to the pilot. If the two indicators were then superimposed, one above the other, upon a common center, the pilot could note at a glance, from the separation of the two indicators, that he was off the straight line course passing through the two landmarks, and he could then steer to bring himself back onto the desired course. "So it occurred to me, well, telescopes are all right * * * they will do for a mountainous terrain * * * but for long distance beacons like between cities it would be useless, and in addition to that it would require two operators on a craft [to man the telescopes] * * *. Then again the telescopes would be useless in a fog * * *. I wanted to get some kind of a radio telescope". And so he had recourse to the teaching of John Hays Hammond as disclosed in patent No. 1,370,- 688 issued on March 8, 1921.

According to plaintiff's testimony, figure 3 of that Hammond patent gave him the idea of a directional antenna, that is, two loops mounted at a fixed angle to each other. Examination of the Hammond patent discloses a good deal more. It teaches the use of such directional antennae, arranged at an angle to each other "so that they will receive radiant energy in different amounts depending upon their orientation with respect to their source of energy"; the amplification of the energy by means of audions or other suitable amplifying devices; the utilization of this differential in energization, suitably amplified, to activate a mechanism in one direction or the other, depending upon which of the antennae is more intensely affected; the connection of the mechanism to the steering apparatus of a moving body. "When the torpedo or boat or other moveable body faces or moves toward the source of energy, the receiving antennae will receive energy in equal amounts and the detectors of electric waves will be equally affected, and the body will continue to face or move in the same direction. But when the body turns so that it no longer faces or moves

toward the source of energy, the receiving antennae will receive energy in different amounts, the detectors will be differently affected, and mechanisms will be set in operation which will tend to turn the body so that it again faces or moves in the direction of the source of energy, and the receiving antennae receive equal amounts of energy". The very general applicability of the principle thus enunciated in the Hammond patent was made explicit in the specification. "It relates * * * to methods and apparatus by which a moveable body such, for instance as * * * an aircraft * * * or a revolving lighthouse may be made to * * * face in the direction of a source of radiant energy".

The plaintiff refers to the Hammond patent as representing the state of the art at the time that he started and the foundation of his radio telescope. (It should be noted, however, that the mentioned Hammond patent refers to another form of Hammond's invention, application for which was filed in 1912 and which matured into patent No. 1,387,850, issued August 16, 1921, which will be hereinafter considered.) According to plaintiff, in Hammond patent No. 1,370,688 the radio antennae were fixed to the craft. They were mounted so that the fore and aft axis of the craft bisected the angle between the loops. In the patent in suit the antennae are mounted rotatably on the craft, instead of rotating with the craft, and the rotation of the antennae is correspondingly reproduced on an indicator instead of being transmitted to a steering mechanism.

The application of the teaching of the Hammond patent No. 1,370,688 would, according to the plaintiff, in case of a crosswind, cause the craft to approach the beacon in a parabolic and not in a straight line, drift-corrected path. That may be so, but it does not necessarily answer the question of invention.

Plaintiff emphasizes that all the claims in suit prescribe that the direction-determining device shall be mounted to rotate about a normally vertical axis. He, therefore, dismisses five of the nine patents cited for anticipation as irrelevant because they show directional antennae fixedly mounted on a vehicle. These cited patents are Eaton, 1,842,342, issued January 19, 1932; Eaton, 1,965,098, filed February 23, 1928, issued July 3, 1934; Hammond, 1,387,850, issued August 16, 1921; McIlvaine, 1,787-992, issued January 6, 1931; Antranikian, 1,920,159, issued July 25, 1933. Four cited patents do show rotatable directional antennae. These are Leib, 1,850,080, issued March 22, 1932; Paterson, 1,692,051, issued November 20, 1928; Dugan, British 161,-784, issued April 21, 1921; Robinson, British 202,733, issued August 27, 1923.

The law is too clear, however, that in finding invention or the lack of it the courts are not bound by any such mechanical formula as is suggested by plaintiff's method of listing the several elements of each of his claims and calling the roll of them against each of the cited references. See Kirsch Mfg. Co. v. Gould Mersereau Co., Inc., 2 Cir., 1925, 6 F.2d 793, 794. And since rotatability is itself, of course, not the invention of plaintiff, it follows that the prior art, including nonrotatable antennae, must be examined to determine as best we can whether what plaintiff contributed rises to the dignity of invention.

The best that I can discover is that plaintiff claims to be the first to "disclose a method of converting any of the conventional radio compasses, with their fixed loops and right-left indicators, into the automatic radio direction finder". That is what he did with the right-left compass of Hammond's patent 1,370,688; and he says he could have done the same with the Dieckmann and Hell, German patent No. 482,281, which was available to the public about six months before the filing date of the patent in suit. The question is, Did that amount to invention? To answer that question, an analysis of this rapidly developing art must be undertaken.

We start with plaintiff's own 1921 British patent 161,784. Therein is a full disclosure of a combination of a direction-determining device with a remote indicator and of two direction-determining devices with a dual indicator. Telescopes, gyro compasses, magnetic compasses and loop aerials are all suggested as direction determining devices. Of course, the system disclosed in that patent is manually operated. It is not the automatic system disclosed in the patent suit. That, however, is the only substantial difference. Plaintiff argues that the British patent does not disclose two indicators, but the compass card with its cardinal marks is unquestionably an indicator—perhaps not as convenient as a pointer but surely adequate to meet the verbal specification and, indeed, plaintiff himself testified

to the utility of such a cardinal mark on a compass card as an indicator of direction. And since the compass, visually disposed before the pilot, is or may be operated by a repeater from a master compass, the direction-determining device and indicator are not merged into one.

Since plaintiff's British patent does not attempt to teach an automatic direction finding system, it necessarily lacks all those elements of the patent in suit which render its system automatic. In that sense the British patent does not read on the claims in issue. It does, however, provide a bench mark for the progress of the art. Plaintiff argues that nothing in the British patent suggests the steering of a craft along a predetermined course by maintaining two indicators in alignment with each other. That is contradicted by page 6, line 108 of the British patent[1] and even if true would be an attempt to describe a device in terms of function, a practice long condemned. Holland Furniture Co. v. Perkins Glue Co., 1928, 277 U.S. 245, 256, 48 S.Ct. 474, 72 L.Ed. 868.

Substantially, plaintiff's problem was to make his 1921 system operate automatically. In accomplishing it did he go beyond the art which was available and at hand? Available were not only Hammond's patent No. 1,370,688 to which reference has already been had but, more significantly, Hammond's patent No. 1,387,850, issued in 1921. That patent discloses how a moveable body may automatically be made to face in the direction of a source of radiant energy; that such radiant energy may be a light, through the interposition of cells sensitive to light, or a broadcasting station, through the interposition of directional antennae and amplifiers; that such energy may be translated to put a motor into operation to move a steering device and thus to use the axis of the vehicle as the direction indicator or to rotate a turn table (which may be upon a craft) so as to orient it towards the source of energy. A further development of this Hammond patent is shown in McIlvaine's patent No. 1,787,992, issued in 1931.

True, since Hammond was essentially showing automatic steering devices he did not disclose the so-called pilot director which conveys visual intelligence of the direction of the proposed course of travel to the pilot or helmsman. In a sense Hammond's vehicle was his pilot director. But in any event since plaintiff's own 1921 patent showed how to bring into relationship a direction finder with a remote indicator, and since Hammond showed him how he could automatically keep his direction finder trained upon the desired target, his inventive problem was solved. The Hammond patent did not show a rotatable antenna; but Dugan's 1921 patent did show a rotatable loop as well as the interconnection between the rotation of the loop and the indicator. Moreover, Leib's patent No. 1,850,080, issued in 1932, Paterson's patent No. 1,692,051, issued in 1928, Robinson's British patent No. 202,733, issued in 1923, showed not only rotatable antennae but indeed automatically operated ones.

The oldest of these three, Robinson's, at least offered a solution to one of the difficulties inherent in the Hammond device, namely, the difficulty of obtaining perfect balance in the two separate amplifiers. That difficulty was one of the serious defects of the Hammond system because a discrepancy in the degree of amplification would render the device inoperative. Both Hammond and plaintiff called attention to the need for obtaining such perfect balance; neither suggested the means of achieving it, especially under the rapidly changing conditions of temperature and atmosphere which are confronted by an aircraft in rapid flight. Robinson suggests a solution for that problem by teaching the use of a single amplifier and by providing a method of having it serve the purposes of two amplifiers. Plaintiff argues that since Robinson's device would not infringe plaintiff's patent if later it cannot be held to anticipate it when earlier. But that adage has its limitations. Here we are concerned with determining whether the combination of concededly old elements possesses that degree of ingenuity which we call invention. On that issue Robinson can by no means be dismissed as irrelevant.

Paterson's device produced audible but not visual intelligence of its automatically trained direction finder. It could also pro-

---

[1] "If the vessel be steered so as to make any given cardinal mark of the compass coincide always with the indicator 24, the vessel will swing around so as to approach or recede from the object at which the observer's direction finder is pointed, and with drift corrected in the compass course indicated by said cardinal mark".

duce a visual signal but only by manual manipulation. Its contribution to the art consisted of adjusting the orientation of its loops to the minimum rather than the maximum intensity of the radio signal. That, too, became an important factor in the solution of the problem of balance.

There is extraordinary similarity between the claims of the Leib patent and claim 6 of the patent in suit. Its chief distinguishing feature is that the motor is not a reversible motor as called for in the patent in suit. The effect of that is that the orientation of the direction finder is not accomplished by the shortest angular route. Plaintiff's claim says nothing about the shortest angular route but admittedly the device disclosed in plaintiff's patent would bring about orientation by the shortest angular route. Furthermore, the mode of operation of plaintiff's device is different from Leib's device. Be that as it may, it becomes clear that by that time the scope for inventiveness for a device like plaintiff's was very materially narrowed. The history of the art shows that after the Robinson patent in 1923, the single amplifier channel, as a solution of the problem of balance, was intensively exploited. See Eaton patent No. 1,842,342, issued in 1932; Antranikian's patent No. 1,920,159, issued in 1933; and the defendant's patents herein charged to infringe. The last of these used, instead of a rotatable loop, a goniometer of the Bellini-Tossi type. Eaton's antennae are not rotatable; but from Eaton's patent and particularly from the disclaimer by plaintiff, in the interference between plaintiff and Eaton's application which matured into patent No. 1,965,098, it is clear that plaintiff is not the inventor of the idea of combining multiple finders with multiple direction indicators.

Plaintiff claims to be the inventor of a pioneer patent entitled to broad construction. If his asserted monopoly is to have any value and significance it must be a pioneer invention. If narrowly construed it becomes valueless in a field where the opportunities for variation, substitution and improvement are so fertile. To a monopoly of broad scope, I am of the opinion, that plaintiff has not established any title. He has not advanced the art. He took what was placed at his disposal by the progress of the radio art through the invention of others. His combination required skill, ingenuity and learning but not inventiveness. I realize there is a residue of doubt which lingers in the mind after forming such a judgment. Once a selection of available means to accomplish a purpose has been made the choice seems obvious and requiring no great mental effort when in fact the very selection may have required inventive genius. That is especially true when the material to be sifted is of great mass or apparently of remote significance. Here, however, no such problem was present. With his own 1921 patent in mind, recourse to Hammond was, as plaintiff himself testified, inevitable as long as plaintiff was to use an existing and not a newly-contrived art.

For a time I was troubled lest I came to this conclusion as a result of the manner of plaintiff's presentation which was devoted to the demonstration, in effect, that his patent did not infringe upon the prior art patents. But I have come to the conclusion that he used that method because it was the most likely to succeed; and that a bold attempt to prove, in the teaching of the patent, a measurable advance in its field would only have emphasized the paucity of its contribution.

### Inoperativeness

The question of the operativeness of the device disclosed in the patent was argued at great length. But it boils down, in my judgment, to the question of adequacy of the disclosure. The language which is the source of the difficulty reads (page 2, line 59): "The gear 35 takes the place of the usual galvanometer dial and has a two part commutator insulated from and fixed to the upper face of the said gear". The defendant reads that language to mean a galvanometer in which has been substituted a gear for the usual dial. It then assumes that the gear is intended to rotate in relation to the galvanometer magnets. If that is the structure taught by the patent, plaintiff concedes that it is inoperative.

Plaintiff maintains, however, that the quoted language means a gear fastened to the magnets so that the gear and magnets rotate together. He professes to find this instruction in the words "usual galvanometer dial". The usual galvanometer dial is a card suitably marked to indicate the extent of deviation of the pointer from its central position. It is commonly clamped to the magnets. If the patent teaches a dial and galvanometer rotating as one, the defendant has failed to establish the inoperativeness of the device. The burden of establishing inoperativeness is upon the defendant. Remington Cash Register Co.,

v. National Cash Register Co., D.C.Conn., 1925, 6 F.2d 585.

Perhaps the disclosure is, strictly speaking, too indefinite and vague to satisfy the statutory standard. 35 U.S.C.A. § 33. It is to be noted, however, that the vague language is not in the claims. United Carbon Co. v. Binney & Smith Co., 1942, 317 U.S. 228, 63 S.Ct. 165, 87 L.Ed. 232. A person skilled in the art would readily see that the system could not operate unless dial and magnets rotated together. The means of accomplishing such joint rotation was readily available. Radio Corporation of America v. E. J. Edmond & Co., D.C.S.D.N.Y., 1927, 20 F.2d 929, 931; A. B. Dick Co. v. Barnett, 2 Cir., 1923, 288 F. 799, 801.

Were the patent otherwise valid I would not strike it down for inoperativeness or for want of sufficient disclosure to make it operative.

It is true that the device continues to be affected by the defect previously mentioned, namely, the 90° and 180° ambiguity. That, however, is not sufficient to warrant a finding of inoperativeness.

Claims 3 and 4 present a special problem. In the course of the argument I addressed to plaintiff the question whether he contended that claim 3 extended to non-automatic devices of the kind described. His answer was in the affirmative as the following colloquy will disclose:

"The Court: Let us get to claim 3.

"Mr. Dugan: Well that, Your Honor, is a very broad claim.

"The Court: Very.

"Mr. Dugan: And it does include the case where the two boys put two sticks on a row boat and have ropes operating two indicators at a distance, for the reason that the invention was particularly new and the patent office allowed it for that purpose.

"The Court: Although it is not automatic.

"Mr. Dugan: Although it is not automatic * * *.

"The Court: Why is not claim 3 as a non automatic finder completely anticipated by your own British patent?

"Mr. Dugan: Because there are not two indicators on there. There is one, and this calls for two indicators.

"The Court: You do not think a compass card is an indicator?

"Mr. Dugan: It is not."

Since, as already indicated, I regard the Dugan British patent as plainly anticipatory of a non-automatic arrangement of the character described in the patent, it follows that claim 3 must be invalidated for the additional reason that it claims too much. Marconi Wireless Telegraph Co. v. United States, 1943, 320 U.S. 1, 58, 63 S.Ct. 1393, 1419, 87 L.Ed. 1731.

"We think that the court below was correct in holding that the Fleming patent was invalid because Fleming's claim for 'more than he had invented' was not inadvertent, and his delay in making the disclaimer was 'unreasonable'."

Whatever is true of claim 3 holds for claim 4.

### Infringement

The accused devices are represented by Exhibits 7, 8, 9 and 10. Exhibit 9 can be eliminated from consideration for it affirmatively appeared, without contradiction by plaintiff, that defendant built that device only experimentally and that it has neither manufactured it for sale nor sold any. Bonsack Machine Co. v. Underwood, C.C.E.D.N.C. 1896, 73 F. 206, 211. Exhibit 7 is represented by patent No. 2,308,521, issued on January 19, 1943, to William P. Lear. Exhibit 8 consists of patent No. 2,294,786, issued September 1, 1942, to William P. Lear. Exhibit 10 is a publication of the defendant describing the Learmatic Navigator. In the first two of these patents defendant has an automatic radio direction finder. It uses two aerials, one a directional loop aerial and the other a fixed non-directional aerial. The directional loop aerial is mounted rotatably on a shaft which is connected for rotation to a reversible motor. The motor's source of energy is a battery. The motor rotates the loop aerial to the right or to the left, depending upon which of two follow-up relays is selectively energized. The selective energization depends upon the directional differences in the radio signals received by the directional loop and the non-directional signals received by the fixed aerial. A single amplifier channel is used. The system is connected to an indicator contrived to point in the direction of the desired station when the loop is in a position to receive the minimum signal from that station or, as it is called, at its null position. No galvanometer is employed in the system.

By this system the defendant claims to have solved the problem of balancing two

230

separate amplification channels by using a single amplification channel; it claims also to have solved the phase-shift problem, the weight problem, the hunt problem and the directional ambiguity occurring at 90° and 180° angles.

The Learmatic Navigator is in its essential elements and operation a combination of defendant's automatic radio direction finder already described with a gyroscopic compass.

If a search is made for literal differences between the accused devices and the claims of the patent in suit, they can be located. Thus defendant uses a single amplification channel whereas plaintiff has two; and in claims 1 and 2 plaintiff requires as many pairs of receivers as there are transmitters, whereas defendant's commercial devices do not show such a multiplicity of receivers. Also, in claim 6 it has been suggested that whereas the claim specifies a circuit closer "operable by energy derived" from the transmitter, in the defendant's devices the energy from the transmitter is used only to "trigger" the switching mechanism, the energy for the operation coming from the auxiliary tone generator.

These would indeed be minor substitutions if we were dealing with a broad, pioneer patent. If plaintiff's invention is entitled to such treatment then it is clear that defendant's devices infringe as follows: the devices disclosed in Exhibits 7, 8 and 10 infringe claim 6; the device described in Exhibit 10 infringes claims 3 and 4; and the device of Exhibit 9, if manufactured and sold, would infringe claims 1 and 2.

Having found, however, that the claims of the patent in issue are invalid, judgment must be given for defendant.