### SCOTT & WILLIAMS, Inc. v. LASTIC-NIT CO., Inc.

#### Civ. A. No. 7748.

United States District Court
D. Massachusetts.

Nov. 1, 1949.

John T. Noonan, Boston, Mass., for plaintiff.

Richard F. Walker, Roberts, Cushman & Grover, Boston, Mass., for defendant.

FORD, District Judge.

This suit is one for infringement of U. S. Patent No. 2,009,361, entitled "Knitted Fabric", issued July 23, 1935, on application filed November 15, 1934, by one John Lawson, to Lawson Knitting Company. In February, 1939, the patent was assigned by a Lawson corporation to the plaintiff corporation admittedly its present owner.

The plaintiff is engaged in the manufacture and sale of knitting machinery with headquarters in Laconia, New Hampshire, and the defendant is a Massachusetts corporation organized in 1933, with its place of business in Waltham, Massachusetts, and engaged since 1933 in the manufacture of knitted elastic fabrics which are the accused fabrics in this suit.

The patent in suit discloses a method for producing a knitted fabric, plain and

rib,[1] and the specification in part states that it relates to knitted fabrics and especially to such fabrics having knitted therein one or more inelastic threads and a thread or strand of uncovered rubber. The specification states that although the use of uncovered rubber is stressed and preferable, covered rubber or other elastic strands are not precluded. The patent discloses the obvious fact that uncovered rubber is more elastic than covered rubber and states that uncovered rubber more readily lends itself to the purpose of the patent because it contracts to such an extent as to cause the inelastic thread to cover or, in other words, plate over the rubber strand which is knitted simultaneously in each knitting loop or stitch of the fabric, thereby concealing the rubber to the eye and preventing the rubber from coming in contact with the body. The knitted fabrics of this type are those used in the making of foundation garments for women, e. g., girdles, etc.

The patent also discloses that the rubber strand or thread is knitted into the knitted loop of the fabric under some tension which may be greater, less than, or equal to the tension placed upon the cotton, rayon or other thread, the tension placed upon the rubber thread being sufficient to cause considerably more of the inelastic thread than of the rubber thread to be knitted into the fabric. After the rubber strand has been knitted into the fabric it contracts laterally and lengthwise (coursewise and walewise). The inelastic strands remain as formed with the result that the released rubber buries itself within the thickness of the fabric while the long loops of the inelastic strands are pushed outward toward the outer surface of the fabric and plated over the rubber.

The accused fabrics of the defendant are rib knit fabrics and it is to rib knitting that the present controversy relates.

Claims 1, 10, 11, 13, and 15 are in suit. The defendant denies validity and infringement of claims 1, 10, 11, 13, and 15. It admits it has been and is now making, using, and selling knitted fabrics which come within the description of claim 10.

The claims in suit read as follows:

"1. A rib knitted fabric having one elastic strand and at least one inelastic strand, the inelastic strand being plated over the elastic strand to cover the latter on both faces of the fabric.

"10. A fabric courses of which are knitted of an elastic thread such as rubber and an inelastic thread, the said courses being composed of at least twice as much of the inelastic thread as of the elastic thread whereby the inelastic thread effectively cover the elastic thread on both faces of the fabric in said courses.

"11. A knitted fabric having knitted therein one relatively inelastic thread, and one thread or strand of uncovered rubber, the inelastic thread being plated over the rubber strand or thread to cover the same on both faces of the fabric.

"13. A knitted fabric including a knitted rubber strand and a relatively non-elastic thread knitted therewith, the thread forming pile loops which effectively cover the rubber strand on both faces of the fabric.

"15. A knitted fabric including relatively inelastic and elastic knitted strands, the elastic strand being under considerable tension, the tendency of the elastic strand to return to its normal, unstretched condition effectively causing the said elastic strand to be concealed on both faces of the fabric by pile-like loops of inelastic strands."

In support of its contention that the patent in suit is invalid for want of novelty and invention, the defendant argues that the subject matter of the patent in suit—the method and product—had been described in U. S. Reissue Patent No. 10,755 to Baron, issued August 17, 1886; U. S. Patent No. 788,997 to W. Bottger, Jr., issued May 2, 1905; U. S. Patents to Rutledge, No. 1,-863,697, issued June 21, 1932 and No. 1,-965,860, issued July 10, 1934; and British Patent No. 9700 of 1908, issued to Clarke.

Baron's patent was one for "Knit Fabric" and relates to knit fabrics, particularly to "double ribbed" fabrics designed to be made into jackets, leggings and like gar-

1. In this case we are concerned with rib knit fabrics.

ments. He disclosed that "by knitting a double-ribbed fabric of four threads or yarns—two of cotton comparatively hard-twisted and two of worsted or woolen of comparatively loose twist— * * * putting the cotton thread under considerable tension and knitting the worsted yarns loosely or with little tension, the cotton threads will be given a peculiar position in the fabric and be so knitted or crossed and interlooped as to form a firm foundation or backing for the ribs, similar to the backing or body of a Brussels carpet, and the worsted yarns will appear on the outer or raised surfaces of the ribs and the cotton upon the back thereof, * * *." This method gave to the goods a soft spongy character and showy appearance. The Patent Office said of this patent that Baron disclosed it was old to knit hard-twisted yarn under considerable tension with a loosely twisted yarn under little tension so that the hard-twisted yarn will embed in the other. This is similar to what the patent in suit teaches, in part, i. e., to knit a plated ribbed fabric, put tension on the strands (rubber) to be hidden so that their loops will be tighter and embedded in the interior of the fabric.

It is true, as was argued in the Patent Office, that in Baron no rubber strands were used, but it is obvious that the same result would be reached if rubber were substituted for Baron's cotton strand.

Rutledge, U. S. Patent No. 1,965,860, issued to Vassar Swiss Underwear Company, Chicago, Illinois, July 10, 1934, on application dated April 15, 1932, covered a combination foundation garment (corset and brassiere) which plaintiff stipulated was manufactured and sold since a date more than two years prior to the application for the patent in suit. It discloses that the bust supporting band and the tail portion covering the hips are plated on both sides by rayon yarn or the like, concealing the composite (covered) rubber body yarn and covered on both sides of the bust supporting band and tail portion. The patent states that the rayon yarn presents a smooth, relatively frictionless surface so that these portions are readily capable of movement with respect to the body and outer garments

will not cling to them. This patent, cited in the Patent Office against the patent applicant, was explained away on rejection of the claims by the Patent Office, as originally presented, by stating that Rutledge in this patent disclosed no intention of knitting the elastic strand under considerable tension. However, Rutledge, U. S. Patent No. 1,863,697, issued June 21, 1932 to Vassar Swiss Underwear Company, Chicago, Illinois, relating to a brassiere, and not cited in the proceedings in the Patent Office, shows an elastic band portion at the bottom of the brassiere to surround the body of the wearer. The patent states that this portion may be knit exclusively from composite elastic rubber yarn (an elastic rubber core with a covering of textile fibre yarn) in a rib stitch and goes on to state that "While the band portions * * * have been described as made from knitted composite elastic rubber yarn, it is often desirable to incorporate with such yarn a plating yarn in order to produce various color effects. If desired the plating yarn may be arranged to hide the composite rubber yarn completely or form designs therewith. The plating yarn may be of any desired textile fibre." He then discloses: "The incorporation of the plating yarn with the composite rubber body yarn may result in a tendency to reduce somewhat the elasticity of the band being formed in the direction of the wales but this may be overcome in the knitting operation by the use of suitable friction or tensioning means applied to the rubber body yarn to cause the stitches made of this yarn to be drawn more tightly than the stitches made of the plating yarn. Thus, the plating yarn stitches are relatively looser than the body yarn stitches so that the elasticity of the band in direction of the wales is not impaired by the incorporation of a relatively inelastic plating yarn."

This patent plainly taught, for more than two years before the patent in suit, the making of a two-way elastic fabric with plating of the fabric yarn effected by tensioning the stretched covered elastic yarn so as to shorten the elastic strand loops in the finished fabric. Upon release from

the needles the stretched rubber strand would contract and, necessarily to some extent, push out the fabric strands into loops and conceal the rubber strand in the interior. It would seem that if this patent were cited to the Patent Office, it would have disposed of applicant's contention that an intention of knitting the elastic strand under tension was not disclosed in the prior art, and, in all probability, the patent in suit would not have been granted.

Bottger, Jr., U. S. Patent No. 788,997, issued May 2, 1905, is relied upon to show lack of novelty and invention by the defendant. This patent discloses the making of elastic fabric by the simultaneous knitting of a fabric strand with an uncovered or bare rubber strand. It also teaches relative tensionings upon the elastic and inelastic strands which if followed would result in plating. This patent was not cited in the Patent Office against the application.

Clarke, British Patent No. 9700, issued November 3, 1908, shows the production of knitted fabrics from two different kinds of yarn in such a manner that one kind of yarn is shown on both sides of the fabric. Clarke accomplished this by knitting a long loop from one thread and a short loop from another thread, the long loops being on the outside surfaces concealing the short loops on the inside. Nothing is stated in this patent with regard to tension devices to plate and there is no mention of the use of elastic strands. As defendant argues, an elastic strand could easily be substituted for the strand to be concealed and, to show the relevancy of this citation, it will be noted that the patent in suit stated that tensioning was not necessarily essential to the invention so long as much more of the plating thread than of the concealed thread is knit into the fabric.

In the light of the prior art, what advance in this complex and highly developed knitting art has the patent applicant here made? The plaintiff argues in its brief that the essential novelty in the teaching of the patent is that an inelastic thread should be plated over a bare rubber strand while the bare rubber strand is stretched at least twice its relaxed length, making possible for the first time the knitting of bare rubber strands into elastic garment fabrics to impart softness, long life, and two-way stretch, with effective coverage of the rubber to avoid its contact with the skin of the wearer.

The patent in suit, as I view it, seems directed to knitting a bare rubber strand into the loops of at least one inelastic strand to that the elastic strand is effectively concealed by the inelastic strand with the use of at least twice as much of the inelastic thread as of the elastic thread. The parties are not in agreement as to whether the claims 1, 10, 13, and 15 are limited to an uncovered elastic strand (claim 11, of course, is) but, at the outset of the specification, the patent states that the invention relates to the use of uncovered rubber. The expert for the plaintiff testified that claims 1, 10, 13, and 15 are limited to uncovered rubber since, as he states, the claims call for the rubber to be plated and concealed and covered rubber was not particularly suitable for this kind of coverage. However, the specification stated: "Although the use of uncovered rubber has been stressed and is preferable, the invention in many aspects does not preclude the use of covered rubber or other elastic strands." (The defendant raises the point the patent has been overclaimed, but this is not discussed in view of the result reached.)

However, assuming arguendo, claims 1, 10, 13, and 15, are limited to uncovered rubber as is claim 11, what novel idea has the patent presented? I find none. Clarke's British patent disclosed how plating could be accomplished without tensioning. The Baron Reissue and the Rutledge Brassiere patents taught how to secure plating and two-way elasticity by the use of different tensionings—loose-twisted yarn over hard-twisted yarn in Baron and the yarn over stretched covered rubber in Rutledge's Foundation Garment and Brassiere patents. Knitting elastic and inelastic threads in the same stitches was old. Plating on both sides to present a smooth, relatively frictionless surface to the body

and outer garments was old as disclosed by the prior art. If stretched bare rubber were substituted for stretched covered rubber, complete plating with the inelastic thread would result.

It was shown in evidence that bare rubber, readily available to the textile industries for a great long time before 1934, was cut in the form of a strand with a square cross section from flat rubber sheets and irregularities in thickness and bubbles and foreign matter were present. These irregularities caused the bare rubber to be weak in spots and it was not suitable for commercial knitting operations where uniform long lengths were required. For this reason the rubber was covered in a stretched condition with fine helically wound textile fibre yarn so that the finished product would still be held under considerable tension. In the early 30's an improved rubber was made by extruding a rubber or latex composition from a circular orifice with immediate vulcanization. This was put on the market in its covered state. However, it led to improvements in cut rubber. There were further improvements and, after the patent in suit was issued, the use of bare rubber increased with the use of proper lubricants and tensioning. Lubricants were necessary as it was difficult for bare rubber strands to pass through guides and feed holes of the machines and bare rubber could not be satisfactorily knit without the use of lubricants. The patent applicant here commenced experiments with bare rubber in 1934 and in the same year applied for the present patent. He did not start any commercial production with bare rubber employed in the knitting until late 1935 or early 1936. Its use increased as lubrication and tensioning problems with respect to rubber were solved and, in 1937, the patent applicant commenced to produce a sizeable volume in the bare rubber field.

The evidence also showed that witness Lumsden, president of the defendant company, started commercially in the elastic garment business during the years from 1930–1933 and also experimented in those years with bare rubber in their production. He failed to reduce to practice any inventive subject matter in connection with the knitting of bare rubber, but he discovered that with bare rubber two-way stretch and complete two-surface plating could be accomplished in the fabric. Thus, evidence showed that the art began experimenting with the use of bare rubber in constructing elastic knitted fabrics in the early 30's, but there was not much activity in the use of bare rubber until the middle 30's.

We now have the question to answer: Was the knitting of bare rubber strands into elastic garments while the rubber strand is stretched to at least twice its relaxed length, or, as the patent states it, "at least twice as much of the silk or cotton thread 2 knitted in a given length of fabric as of the strand 1", a patentable improvement? This two to one ratio is what the plaintiff claims was the essential novelty of the teaching of the patent. It seems conclusive that the inventor's substitution of bare rubber for covered rubber in the present patent did not by any means reach the level of invention. Any person skilled in the art having knowledge of the use of covered rubber in its tensioned condition as disclosed in the prior art would know at once in using bare rubber that it was necessary to apply tension to the bare rubber and increase the tension by experimentation until the desired two-way stretch was obtained to secure two-surface plating. Of course, a person skilled in the art would be confronted with problems of feed and lubrication but these could be solved by one experienced in the art and it was not until these problems were solved by experimentation that success was attained with bare rubber. One skilled in the art was competent to attain success after the improved rubber appeared on the market. There was nothing new in the Lawson patent that taught how to do it that was not disclosed in the prior art.

It is elemental that the mere substitution of one material for another will not amount to invention even when the new material is more effective. Trubenizing Process Corp. v. Jacobson, 2 Cir., 98 F.2d 899; Mershon v. Sprague Specialties Co., 1 Cir., 92 F.2d 313; Walker, Dell.Ed. Vol.

I, Sec. 29 Supp. No new and unexpected results were produced by the substitution of bare rubber in the present patent for covered rubber. The mere fact that the use of bare rubber resulted in better plating and presented a better surface to the material is not by any means enough. Plating similar to the patent in suit was old in the art and better plating, if present, would hardly constitute a patentable improvement. As the court stated in Smith v. Nichols, 21 Wall. 112, 119, 22 L.Ed. 566, "But a mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means with better results, is not such invention as will sustain a patent." See Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973; B. F. Sturtevant Co. v. Massachusetts Hair & Felt Co., 1 Cir., 122 F.2d 900, 907.

The other grounds relied on by the defendant to show invalidity are not discussed in the light of the result reached.

The conclusion of the court is that the patent in suit is invalid for want of novelty and invention.

Judgment for defendant with costs.