## A. O. SMITH CORP. v. AFFILIATED GAS EQUIPMENT, Inc.

### No. 14401.

United States Court of Appeals
Fifth Circuit.

June 30, 1953.

Geo. I. Haight, Chicago, Ill., Edwin A. Andrus, Milwaukee, Wis., W. C. Gowan, Dallas, Tex., James D. Porter, Milwaukee, Wis. (Merl Sceales, Milwaukee, Wis., John W. Hofeldt, Chicago, Ill., of counsel), for appellant.

Henry N. Paul, Jr., Philadelphia, Pa., William H. Neary, Dallas, Tex., Frank R. Higley, Cleveland, Ohio, John H. Austin, Philadelphia, Pa. (John A. Wilson, Cleveland, Ohio, of counsel), for appellee.

Before HUTCHESON, Chief Judge, and RUSSELL and STRUM, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal from a decree dismissing plaintiff's complaint and supplemental complaint in a patent infringement suit and denying the relief sought, runs true to form in presenting the conflicting claims and counter claims usual in such suits. In addition it involves a specific situation arising out of the reissue of the patent mainly relied on.

As originally filed on July 18, 1952, the only patent relied on in the suit was Patent No. 2,267,361, issued to plaintiff December 23, 1941, on an application first filed by Orrin E. Andrus on April 6, 1935, and renewed November 29, 1937, for an invention in Corrosion-Resistant Metallic Structure.

Answering August 11, 1952, the defendant, among other defenses, pleaded that the patent was invalid (a) for want of a drawing as required by Title 35, § 34, which, despite a ruling by the patent examiner that a drawing must be attached, the applicant had failed to furnish; (b) because the specification does not describe the invention with the particularity and specificity required by section 33, Title 35, U.S.C.; (c) because the application was forfeited and renewed without any statutory basis therefor; and (d) because the claimed invention had been anticipated as shown in the United States Patents and printed publications cited in the answer.

Plaintiff thereupon moved for permission to file, and, its motion granted, filed on October 9, 1952, a supplemental bill of complaint. In this bill, it alleged infringement of claims one and eight, of the original Andrus Patent No. 2,267,361 and of claims one and eight of the reissue thereof, No. 23,559, issued to plaintiff on September 30, 1952, upon an application for reissue filed by Andrus on August 25, 1952, for an invention in Corrosion Resistant Metal Structure, and also of claims one and two of U. S. Letters Patent, No. 2,322,488 issued to plaintiff on June 22, 1943, upon an application filed by O. E. Uecker, for an invention in Glass Lined Hot Water Tanks.

For answer to the supplemental complaint, defendant repleaded the defenses pleaded in the original complaint, and pleaded further: that for the reasons fully set out in the answer, the reissue patent was invalid because issued outside the authority, and in violation, of section 34, Title 35 U. S.C., governing the reissue of patents; and that an estoppel had arisen against plaintiff's declaring on the reissue patent because, in reliance on the invalidity of, and the obvious limitations upon, the original patent, defendant had entered into the manufacture and sale of the accused heater before the grant of the reissue patent and had thereby acquired *interim* rights to continue its manufacture and use.

The cause coming on to be heard on the issues joined by the pleadings, and evidence having been offered and arguments fully heard, the district judge filed findings of fact and conclusions of law [1] and entered

1. "The plaintiff declares upon Patent Number 2,267,361, Dec. 23, 1941, and the re-issue of the Andrus patent, Number 23,559, Sept. 30, 1952, and the Uecker patent, Number 2,322,488, June 22, 1943, each relating to a corrosion-resistant metallic structure with Uecker calling his a glass-lined hot water tank.

"I find as facts:

"That those patents belong to the plaintiff as assignee. That Patent Number 2,267,361 was not accompanied by a drawing. That the re-issue sought and received on September 30, 1952, was after the defendant had constructed its own water heater, and had been requested to exchange blue prints with the plaintiff and engaged in consulations with reference to the association, either in manufacture of the different parts for a water heater, or, for a license agreement. That such consultation was held in the office and place of business of the plaintiff, and, subsequently, such association and licensing was refused.

"I find that the water heater of the plaintiff is a commercial success, and that the plaintiff has expended large sums of money in its manufacture and sale and advertising. That the defendant has had a fairly satisfactory business with its heater, commercially.

"I find that the prior art supports the right of the defendant to engage in the business in which it is engaged, with reference to such a heater, and that for years before the plaintiff claims invention, the enameling and the cathodic protection, as well as vitreous enameling had

the decree from which plaintiff has appealed.

Here pointing out that the district judge made no specific findings as to the Uecker patent and insisting that its findings as to the original Andrus patent and its reissue are clearly erroneous, appellant urges upon us that the findings must be set aside and

all been developed and in some patents anticipated.

"That the water which is heated by a comparatively low voltage in each heater, liberated some of the hydrogen which, in turn, seeks out and enters, if there be unenameled, or, unprotected metallic, surfaces. That this fact was known and remedy sought against it as shown by anticipating patents, and by prior art, as disclosed in publications, and in actual use. This seeking out such exposed places results in erosion, or, pitting, or, corrosion, which destroys and renders less efficacious.

"That these facts were known and were sought to be combatted by the original patentees, because the protection of underground pipe is, and, was, a highly important matter.

"The Buck patent Number 148,593, 1874, as well as the Folsom, over Buck, in 1884, related to hot water heaters, iron and coated internally with enamel, which is vitreous according to Niedringhaus patent prior to Buck and Folsom. Likewise, the first tanks were galvenized iron, and then came the enameled metal tank. Buck. Also, Folsom. See also Ross, Mills and Gesell, as well as Canfield, Perkings, and Hill. 1899, Ross Patent Number 629,902, zinc anode for a water containing combination boiler; also Gesell Patent Number 1,269,926, Mills Patent Number 1,664,800, pipe protected by anode. Also vitreous enamel, prior to 1930, on pipe, Smith Number 184,229, February 11, 1929.

"I also find as a fact, that the plaintiff's heater is superior to the defendant's heater, and has been largely so recognized by the buying public, which has resulted in large sales.

"Conclusions of Law.

"I find that as a condition in the aplication for a patent, there must be a drawing as prescribed. Also, that whenever a patent is, through error, without any deceptive intention, deemed wholly, or, partly inoperative, or invalid by reason of a defective specification, or, drawing * * * the commissioner shall upon the surrender of such patent * * * reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for re-issue. Any such re-issue patent shall not extend the scope of the original patent, unless applied for within two years of the issuing date of the original patent.

"The issuance is prima facie evidence of novelty and utility. In an infringement case the burden rests upon the plaintiff to establish infringement, but the burden is on the defense to demonstate illegality of the patent claims, and, illegality of the patent itself. In an infringement case, reasonable doubt must be resolved in favor of a claim for which the patent was issued, and under the statute a patentable device must not only be new and useable, but also must be invention, or discovery. Not discovery of a law of the universe, but a discovery which is, itself, invention.

"I also find as a conclusion of law, that the action of the plaintiff as disclosed by the testimony in calling for a conference, and with reference to the failure of having a drawing upon its original patent, estops it, and makes it inequitable to denominate the defendant as an infringer.

"Authorities supporting the above conclusions of law relate to the invalidity of the reissue which was filed over seventeen years after the defect in the original patent was called to the attention of the plaintiff. General Radio Co. v. Allen B. DuMont Laboratories, 3 Cir., 129 F.2d 608. Likewise, invalidity is asserted because no statement of facts, or, evidence showing the existence, or, character of indifference, or, accident, or, mistake. Union Switch & Signal Co. v. Louisville Frog, Switch & Signal Co., 6 Cir., 73 F.2d 530, [550]; Firestone Tire & Rubber Co. v. United States Rubber Co., 6 Cir., 79 F.2d 948, 960–961.

"Also, as to lack of appropriate oath. Title 35, U.S.Code, Sec. 34; R.S. 4889, 4890, 4891, show requirement of the drawing.

"The equity which has intervened for the benefit of the defendant, as stated above by reason of substantial expenditures and development work, is presented in Pelzer v. Meyberg, C.C., 97 F. 969.

"The antiquity of the combination of elements protecting against erosion, is somewhat photographed in Dow Chemical Co. v. Halliburton Oil Well Cemeting Co., 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973.

"Injunction and recovery is, therefore, denied the plaintiff as prayed." [107 F.Supp. 251].

the judgment may not stand. We cannot agree.

█ The fact that no findings were made as to the Uecker patent cannot affect the decree which was general unless the evidence in the record demands a judgment for plaintiff on this patent.

█ It is quite clear we think that it does not. If the Uecker patent is for a valid invention, and it is difficult for us to see invention in it, it is quite clear that in the state of the art, it must be restricted within narrowest limits, and that, so restricted, there is no sufficient proof that defendant has infringed its claims.

█ The real, the serious contention is over the Andrus patent as reissued. Claiming that, in the Andrus reissue, provisions of the reissue section, R.S. 4916, 35 U.S.C. § 64, were fully and exactly complied with, and that the claims of one and eight thereof are valid and infringed, appellant insists that the Court erred in denying it the relief sought in its supplemental complaint.

Claiming, too, that the original patent and its reissue showed real invention and that the patents and publications relied on as anticipation were not sufficient to invalidate it, appellant insists that the Court erred in holding the patent invalid. We do not think so.

On the contrary, we are of the clear opinion that the district judge was right in rejecting the claims of the patent and denying the relief prayed. While it is admitted that the patent is for a combination and that every element of it is old, it is claimed in favor of patent validity that the presumption of validity attending its granting, the success that has followed its use and the fortuitous,

though lucky, chance which enabled Andrus to hit upon the combination without a real understanding in advance of what it would do, not only supports but requires a finding of validity and that the Court should have found that the combination in the form and manner employed brought two old ideas together producing a new and useful result in a new and useful way.

We think that it is just here that the fallacy of plaintiff's claim lies. It is in endeavoring to infuse patent life into an inert combination of elements, each of which was old and well known. All that is made to appear here is the well known result of the operation of factors well known to those in the art and well described in printed publications, particularly the Transactions of the Electro-Chemical Society published in September, 1933, which fully described cathodic protection of coated pipe,[2] and in the same article discussed various kinds of protective coating for pipe with an express reference to vitreous enamel coating.[3]

We are in no doubt that the ordinary skilled artisan reading this publication would see that cathodic protection was applicable to vitreous enamel coating as to other protective coatings, especially since the article goes further and leads the skilled artisan by the hand, telling him specifically not to forget that vitreous enamel had been recommended as a coating.

In addition, the Smith patent, now run out, under which plaintiff has enjoyed a seventeen year monopoly, had already taught the art that vitreous enamel was a superior pipe coating.

In its brief, plaintiff tells us that the Transactions' publication was referring to the Smith patent when it mentioned vitre-

2. "* * * One way of stopping corrosion at defective points on a coated line is to maintain the line cathodic with respect to the adjacent earth. This involves a continuous expense for electrical energy. The amount of electricity consumed per unit length of protected pipe depends on the resistivity of the coating and the area of the spots where poor application or abrasion has caused the coating to be very thin or absent. Several reports of the successful application of supplemental cathodic protection

have been made, among which are those of Kuhn and by Schneider."

3. "Recently a vitreous enamel has been offered for pipe line protection. The material seems to have possibilities, but only exposure to a variety of soil conditions will tell definitely the extent of the protection such a coating can afford. In addition to withstanding soil action the coating must resist a considerable amount of rather rough handling and be reasonable in cost."

ous enamel. With his full knowledge of the Smith patent, Andrus, who was Smith's assistant, could not fail to test cathodic protection of Smith's enameled pipe as his first selection, and such testing should not, be held to be inventive.

Even before such testing, however, Andrus felt confident that he would gain the same results characteristic of the earlier uses by others of cathodic production. As stated by him there was no reason to believe that it would not act in the same way. All of the lengthy discussions in plaintiff's brief of the splitting of molecules by electrolytic current, the attempts to describe the phenomenon in new words, the speaking of atomic hydrogen penetration adds nothing to the obvious simplicity of what Andrus actually did.

Crawford, the director and research engineer of the plaintiff, stated but the simple truth when he testified, "Mr. Andrus applied cathodic protection to pipe of the same character shown in the Smith patent."

Andrus himself said that his conception of his invention was complete in 1930, and that at that time he had made up his mind that good results would be achieved by it, and it was only later that his tests were directed to the development of the theory of which so much is made, the liberation of hydrogen in relation to cathodic protection.

When Andrus was asked what the substance of his invention was, he replied, "The substance of the invention of the patent in suit is the combination of vitreous enamel on metal structures with cathodic protection to prevent the corrosion of the structure in the surrounding medium."

The discussion in appellant's brief of the nature of cathodic protection merely reiterates what had been understood in the art for years and is not part of the Andrus invention. The original patent being invalid for the reasons stated, the reissue could not breathe life into it. But if we are wrong in this and the original patent would have been valid if it had been accompanied by drawings, we think that under the facts and circumstances in this case no proper case for a reissue was shown. Certainly, in the face of the long delay in applying for it and the fact that defendant had, on the faith of a sincere and well founded belief that the patent was invalid, made large expenditures in connection with the manufacture and sale of the accused heater, the defendant acquired intervening rights, and its manufacture and sale before the reissue *was* not an act of infringement.

The judgment was right. It is affirmed.