**Percy C. CHESTERFIELD**

v.

**UNITED STATES.**

**No. 49230.**

United States Court of Claims.

March 5, 1958.

Robert F. Conrad, Washington, D. C., for plaintiff. Watson, Cole, Grindle & Watson, Washington, D. C., were on the brief.

G. M. Paddack, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

PER CURIAM.

This case involves a claim that the United States has infringed certain patents that were owned by the plaintiff.

The case, which involves both the issue of validity and the question of infringement, was referred under Rules 45 and 46, Rules of Court of Claims, 28 U.S.C.A. to Donald E. Lane, a trial commissioner of the court. The commissioner was directed to make findings of fact and to recommend legal conclusions in the light of the findings of fact, applicable statutes, and legal principles involved.

Pursuant to such reference, the commissioner has submitted his findings of fact and conclusion of law.

The court, after having considered the evidence, the briefs, and arguments of counsel, adopts the findings and opinion of Commissioner Lane, which are printed below, and pursuant thereto plaintiff's petition will be dismissed.

It is so ordered.

Opinion of Commissioner

This is a suit for patent infringement. Plaintiff contends that claim 5 of United States patent 1,698,934, and claim 4 of United States patent 1,698,935 have been infringed by certain heat-resistant alloys procured by the defendant.

■ Two issues are before the court, first, the validity of the two claims in suit, and, second, whether the defendant has infringed said patent claims. It is recognized that, of those two issues, validity has the greater public importance. Sinclair & Carroll Co., Inc., v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644. Where the court finds as a fact that the patent claims in suit are clearly invalid for want of invention, it may not be necessary to consider the issue of infringement. Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973.

■ The patents in suit relate to metal alloys containing cobalt and nickel with other metals and nonmetals. The patent specifications state that the alloys disclosed are designed for use in the production of high-speed cutting tools. The alloys contain cobalt, nickel, and carbon plus a metal or metals capable of forming hard carbides. Patent 1,698,934, hereinafter called the '934 patent, has the broader claims, and patent 1,698,935, hereinafter called the '935 patent, has claims specific to the use of chromium and molybdenum as metals forming hard carbides.

Claim 5 of the '934 patent reads:

"An alloy comprising 10 to 45% cobalt, 7 to 30% nickel, and 0.5 to 3.5% carbon, the remainder of the allow consisting chiefly of metal capable of forming hard carbide."

Claim 4 of the '935 patent reads:

"An alloy comprising 15 to 50% cobalt, 7 to 30% nickel, 20 to 45% chromium, and 7 to 35% molybdenum, with a small amount of carbon."

The patent claims recite alloy compositions in terms of ranges expressed in maximum and minimum percentages by weight for each of several elements. The ranges claimed are relatively broad, such as 7–30 per cent nickel. The specifications disclose several specific alloys with compositions that are within the limits claimed. The specification of the '935 patent is similar to that of the '934 patent, but emphasizes the use of molybdenum as a metal capable of forming a hard carbide.

The patents state that alloys for high-speed cutting tools must have the property of *red hardness* so that a tool made therefrom may maintain its cutting edge after the same has become red-hot. It is stated that such alloys must also have abrasive hardness and should contain hard crystals, usually metallic carbides, embedded in a metallic matrix. It is stated that the principal object of the Chesterfield invention is to improve the matrix of carbide-containing alloys to increase their strength and heat resistance and also to reduce their liability to flake, crack or splinter during use. The specifications state:

"I have found that an alloy formed of hard carbides and a matrix composed of both cobalt *and* nickel as its basal components gives a much superior cutting tool to one made with either cobalt *or* nickel alone." [Emphasis added.]

The Chesterfield patents, applications filed in 1924, are not pioneers in the field of metal alloys containing cobalt and nickel. Fahrenwald patent 1,346,188, issued in 1920, discloses alloys for firearms and ordnance. Example (f) in the Fahrenwald patent teaches an alloy of any two iron group metals, plus tungsten or molybdenum, and small amounts of carbon, silicon, and manganese. The iron group metals include cobalt, nickel, and iron. The Fahrenwald teaching of any two iron group metals obviously includes cobalt and nickel, or cobalt and iron, or nickel and iron. Example (f) in the Fahrenwald patent teaches an alloy of iron or nickel, plus cobalt, chromium or tungsten, and carbon. It is clear that Fahrenwald taught the alloy art that two iron group metals, such as cobalt and nickel used together, provided an alloy better resistant to the high temperatures and strains of ordnance devices than an alloy containing cobalt or nickel alone as the basal component. The Fahrenwald alloys' inclusion of chromium group metals, such as chromium, tungsten, and molybdenum, and the inclusion of small amounts of carbon, provided an alloy having hard carbides embedded in a matrix of cobalt and nickel. The ranges disclosed in this Fahrenwald patent include specific alloys within the broad ranges recited in the two Chesterfield claims in suit. The claims in suit are invalid because they are so broad as to cover alloys disclosed and taught by a prior patent.

A second Fahrenwald patent, 1,357,550, issued in 1919, also discloses an alloy of one or more iron group metals, plus chromium and molybdenum or tungsten, and plus carbon. This alloy is said to be chemically resistant and sufficiently strong to resist accidental breakage. The ranges specified in Fahrenwald 1,357,550 include alloys coming within the ranges recited in both claim 5 of the '934 patent and claim 4 of the '935 patent.

Haynes patent 1,150,113, issued in 1915, discloses alloys of cobalt, nickel (replacing iron), chromium, other chromium group metals, and carbon. The alloys are said to have sufficient hardness for saws and similar tools. The ranges specified in the Haynes patent include alloys within the ranges recited in claim 5 of the '934 patent. The Haynes patent does not teach the use of at least 7 per cent molybdenum as recited in claim 4 of the '935 patent.

An earlier Haynes patent, 1,057,423, issued in 1913, discloses tool alloys of cobalt with any two metals in the chromium, tungsten, and molybdenum group. These alloys did not include nickel. This

early Haynes patent was held to be infringed by a Chesterfield alloy including cobalt, nickel, chromium, tungsten, carbon, and impurities. See Haynes Stellite Co. v. Chesterfield, D.C., 8 F.2d 765, and 6 Cir., 22 F.2d 635. The Chesterfield alloy held to infringe Haynes had a composition within the ranges recited in claim 5 of the '934 patent here in suit.

Austrian patent 80,117, issued in 1918, discloses cutting tool alloys having a matrix of metals from the iron group alloyed with one another, and having hard borides or silicides embedded in the matrix. The Chesterfield patents mention boron carbide and silicides. It is believed that a mere substitution of hard carbides for the hard borides or silicides in the cobalt-nickel alloy disclosed in the Austrian patent lacks patentable invention.

British patent 108,164, issued in 1917, discloses tool alloys that are said to be resistant to high temperatures. The British patent alloys comprise nickel or cobalt or both, plus chromium, tungsten, and silicon, but carbon is not mentioned specifically.

Marsh patent 811,859, issued in 1906, and also British patent 2129 of 1906, and French patent 362,774 of 1906, disclose an alloy for electrical resistance elements. The alloy comprises nickel and/or cobalt together with chromium or molybdenum or tungsten. Carbon probably was present as an impurity in these alloys.

Reference must also be made to German patent 270,750, issued in 1914, disclosing an alloy for gas turbine parts and said to be resistant to high temperatures. The German alloy comprised cobalt to which nickel could be added, plus chromium.

In view of the several patents discussed above, it is clear that Chesterfield was not the first to teach high temperature alloys containing both cobalt *and* nickel or alloys containing hard carbides embedded in a matrix of cobalt *and* nickel.

■■ The two claims in suit are so broad as to cover alloy compositions which fall within the ranges taught by the prior art patents. Defendant's expert, an experienced metallurgist and patentee in the field of modern high-temperature-resistant alloys, derived from the prior art patents a number of alloy compositions falling directly within the broad ranges recited in the claims in suit. Even though such experts may possess and utilize the twenty-twenty vision of hindsight, it is clear that many alloys within the ranges claimed by Chesterfield would have been obvious, at the time the Chesterfield applications were filed, to a person having ordinary skill in the metal alloy art. Specific alloys discovered within known broad ranges may involve patentable invention where new and unexpected results and properties are found. The Chesterfield patent claims in suit do not claim specific alloys, but claim broad ranges of compositions including inferentially from 21.5 to 82.5 per cent of metals forming hard carbides. It appears questionable whether an alloy containing 22 per cent cobalt and nickel plus 78 per cent chromium and molybdenum plus a small amount of carbon could be an alloy of the properties described in the Chesterfield specifications, yet such an alloy falls within the broad terminology of the claims in suit. The specifications suggest that the total amount of cobalt and nickel should be between 30 and 70 per cent, but the claims are not so limited. A patent claim is invalid as too broad when it covers alloys which would not serve the purpose of the alleged invention. See Cooke v. United States, 81 F.Supp. 1018, 113 Ct.Cl. 65, 80. The patent statutes provide for a specification separate from the patent claims, and require that the claims particularly point out and distinctly claim the subject matter which the applicant regards as his invention. It is the *claim which* measures the grant to the patentee. It is also clear that the claims fail to perform their function when they overclaim the invention. When they do so to the point of invalidity, such claims are not saved by resort to the specifications. Graver Tank & Mfg. Co., Inc., v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535,

93 L.Ed. 672. It is apparent that experimentation is necessary within the broad ranges recited in the claims in suit in order to determine what alloys, other than those specifically set forth in the specifications, have the qualities suitable for use in cutting tools. The two claims in suit reciting formulae which require experimentation are indefinite and invalid. Davis Airfoils, Inc., v. United States, 124 F.Supp. 350, 129 Ct. Cl. 514, 516.

With respect to the issue of infringement, the plaintiff contends that certain alloys identified as S–816, 422–19, and 6059 infringe the claims in suit. The S–816 alloy, developed and used for supercharger parts and for buckets or blades in gas turbines, has a specific composition set forth in the findings. The S–816 alloy of cobalt, nickel, chromium, and other metals and non-metals contained .32–.43 percent carbon and 3.5–4.5 per cent molybdenum. Claim 5 of the '934 patent specifies .5–3.5 per cent carbon, and claim 4 of the '935 patent specifies 7–35 per cent molybdenum. The S–816 composition is thus outside the *limits* recited in the claims in suit. In view of the prior art, plaintiff may not extend the broad ranges recited in the claims to cover alloys beyond the claim limits. In litigation involving an alloy claim, Circuit Judge Simons stated:

"In a crowded art, and particularly one dealing with alloys, where, as already noted, small changes of percentages often produce alloys of totally different characteristics and where, as here, the inventors have precisely limited their invention to the percentages recited in the claim, we are precluded from interpreting as within the monopoly of the patent that which the inventors meticulously excluded. The claim calls for 0.5 to 7% nickel. It is demonstrated by the evidence that the defendant's pistons do not reach this minimum in nickel content. It is true that they approach it, the nickel range being from .04 to 0.45. The court below thought that this

deficiency in nickel made departure from the patented formula merely colorable, although it was strongly urged that the presence of nickel was accidental only and an impurity rather than an ingredient. The evidence, however, discloses that such minute percentage of nickel has no substantial effect upon the alloy. According to Dr. Jeffries the nickel content lowered thermal expansivity but little, and achieved but minimum increase in initial hardness. The defendant gained hardness by a percentage of manganese which Dr. Jeffries conceded was not only a very good hardener but helped to reduce the coefficient of expansion. There was, moreover, evidence that there would have been no difference in the alloy if the nickel had been entirely omitted. In the light of this exposition, with the burden of proof upon the plaintiff to establish infringement, we are unable to conclude that it was sustained." Aluminum Co. of America v. Thompson Products Inc., 6 Cir., 122 F.2d 796, 800.

It is apparent from the discussion above that the claims in suit, if valid, are not infringed by defendant's use of the S–816 alloy containing less carbon and less molybdenum than defined in the claims.

The 422–19 alloy was also a cobalt-nickel alloy with chromium, molybdenum, carbon, and other metals and non-metals. The 422–19 alloy comes within the broad ranges recited in the two patent claims in suit, and actual use by the defendant would constitute infringement of said claims if the claims are valid. However, the evidence shows that a portion of the 422–19 alloy procured by the defendant was used only for testing and for experimental purposes, and there is no evidence that the remainder was used other than experimentally. Experimental use does not infringe. In a patent infringement case, District Judge Rifkind said:

"The accused devices \* \* \* can be eliminated from consideration for it affirmatively appeared, without contradiction by the plaintiff, that defendant built that device only experimentally and that it has neither manufactured it for sale nor sold any." Dugan v. Lear Avia, Inc., D.C.1944, 55 F.Supp. 223, 229.

This principle was applied earlier by District Judge Seymour, who said:

"It is true that, if an infringing machine is made or used as an experiment merely, it does not infringe former patents." Bonsack Mach. Co. v. Underwood, C.C.1896, 73 F. 206, 211.

The claims in suit, if valid, are not infringed by defendant's experimental use of the accused 422–19 alloy.

The 6059 alloy was likewise a cobalt-nickel alloy with chromium, molybdenum, carbon, and other metals and non-metals. The composition differs from the 422–19 alloy mainly in having less cobalt and more nickel. The maximum molybdenum content of 6059 alloy is 6.5 per cent, which is less than the 7.0 per cent minimum recited in claim 4 of the '935 patent. The '935 claim was not infringed by the 6059 alloy. The minimum nickel content of 30 per cent in 6059 alloy is the same as the maximum nickel content of 30 per cent recited in claim 5 of the '934 patent. Plaintiff's metallurgical expert testified that 6059 alloy was used experimentally. As pointed out above, experimental use is not an infringing use. It is noted that plaintiff has stated that 6059 alloy does not make full use of the plaintiff's patented invention.

The claims in suit, if valid, are not infringed by defendant's use of the accused 6059 alloy.

Summarizing the foregoing discussion, it is concluded that the two claims in suit are clearly invalid over the prior art, and that if these claims are construed to be valid, then the defendant's procurement and/or use of alloys of the agreed composition of S–816, 422–19, and 6059, does not infringe said claims. The petition should be dismissed.